Grover Workplace Solutions, P.C.
MARGARET J. GROVER, Esq., State Bar No. 112701
mgrover@groverworkplacesolutions.com
1300 Clay Street, Suite 600, Oakland, CA 94612-1427
Telephone: 510-654-1678

The Debevec Law Firm, LLC
RHONDA BAKER DEBEVEC, Esq., OH State Bar No. 0068260
rdebevec@debeveclaw.com
700 W. Saint Clair, Suite 214, Cleveland, Ohio 44113 Telephone: 216-331-0954

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH NICKLES, Individually and as Administrator of the Estate of Joshua Conner, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA and,<br><br>JOHN/JANE DOES 1 THROUGH 10,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>NEGLIGENCE (FEDERAL TORT CLAIMS ACT, 28 U.S.C. §§ 1346(b), 2671-2680 ) |

Plaintiff DEBORAH NICKLES, Individually and as Administrator of the Estate of Joshua Conner, Deceased alleges as follows:

**I.**

**INTRODUCTION**

1. Plaintiff DEBORAH NICKLES, Individually and as Administrator of the Estate of Joshua Conner brings this against the Defendant for the wrongful death of Joshua Conner on December 25, 2018 when the Defendant violated its contingency plan's edicts and negligently failed to close Yosemite National Park during a governmental shutdown during which neither

appropriate supervision nor emergency rescue services were provided to protect the health and safety of the public.

## II.

## THE PARTIES

2. At the time of the wrongful death, Plaintiff DEBORAH NICKLES was a resident of the State of Ohio and Joshua Conner's mother.

3. Joshua Conner was born on April 26, 1986. At the time of his death on December 25, 2018, he was 32 years old; unmarried and left no surviving children.

4. After Joshua Conner's wrongful death, Plaintiff DEBORAH NICKLES was duly appointed as the Administrator of his Estate by the Probate Court of Allen County located in Lima, Ohio.

5. Defendant UNITED STATES OF AMERICA ("UNITED STATES") is a governmental entity that owned, operated and controlled Yosemite National Park located in Tuolumne, Mariposa and Madera counties of California through its' agency the UNITED STATES NATIONAL PARK SERVICE ("NPS.").

6. In the months preceding Joshua Conner's death, NPS acted through various agents and/or employees, DOES 1 through 10, whose negligent acts or omissions occurred within the course and scope of their employment or agency for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671-2680 ("FTCA").

7. The true names and capacities, whether individual, corporate, associate or otherwise of DOES 1 through 10 are unknown to Plaintiff who therefore sues Defendant by such fictious names and may seek leave to amend this Complaint to identify their true names and capacities when ascertained. The Defendant is sued as principal and is liable for all negligent actions or omissions committed by its employees or agents within the course and scope of such employee or agent's employment or agency.

## III.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this claim which arises under the Federal Tort

1  Claims Act, 28 U.S.C. § 2671- 2680 pursuant to 28 U.S.C. § 1346 and 28 U.S.C. § 1331 and the
2  value of this claim exceeds $75,000.
3      9.    This Court has jurisdiction over the Parties in this matter.
4      10.    Venue is proper in this jurisdiction in that a substantial part of the events or
5  omissions giving rise to the claim occurred within Yosemite National Park.
6      11.    Plaintiff DEBORAH NICKLES on behalf of herself, the Estate, Joshua Conner's
7  surviving brother, Cory Conner and, surviving father, Jeffrey Conner, timely filed an
8  Administrative Claim Form 95, for damage, injury and death on December 17, 2020 with
9  Defendant UNITED STATES, through its Department of Interior, National Park Service and
10 Yosemite National Park.
11     12.    Plaintiff DEBORAH NICKLES has timely filed this Complaint within six months
12 of the Defendant's denial of the Administrative Claim.

## IV.

## FACTUAL ALLEGATIONS

15     13.    Pursuant to the Antideficiency Act, 31 U.S.C. § 1341-1342, in the absence of
16 appropriations, NPS and Yosemite National Park officials are prohibited from incurring
17 obligations that cannot be lawfully funded from prior appropriations.
18     14.    To prevent incurring unfunded obligations, NPS and Yosemite National Park
19 officials are required to submit a Contingency Plan for review to the Office of Management and
20 Budget ("OMB") that sets forth its plan to orderly shutdown operations in the event of a lapse in
21 appropriations.
22     15.    In compliance with this mandatory obligation and as the 2013 governmental
23 shutdown was imminently approaching, in September 2013, the NPS and Yosemite National Park
24 submitted an Updated Fiscal Year 2014 Contingency Plan that, like its predecessor Contingency
25 Plans, required the immediate closure of the national park facilities and grounds.  Specifically, if
26 there were a lapse in appropriations, the Fiscal Year 2014 Contingency Plan required the
27 following to occur:
28         Immediate steps to close and secure national park facilities and
        grounds including the closure of public roads and access;

    The locking or securing of all parking lots, roads and other park facilities;

    Notice to the public of the closure through media outlets;

    On the first day of the shutdown, employees were to "place signs in park areas to advise visitors about park closing and hazards of the area" and "place barriers to prevent visitors from entering park;" and,

    The furlough of all non-essential NPS employees including EMS and First Responders who remained on-call. Under the terms of the plan, the overall NPS staffing was to be reduced by over 90%.

16. On October 1, 2013, after the funding for NPS expired and no Fiscal Year 2014 spending bill had been adopted by Congress, then Director of NPS, Jonathan Jarvis, directed the closure of the NPS facilities as required under its Contingency Plan and the agency's mission to ensure visitor safety and the integrity of the park resources. Moreover, the Director determined that "measures less restrictive than a national closure will not suffice to maintain public health and safety and to protect park resources and values."

17. Upon information and belief, NPS did not update the 2014 Fiscal Year NPS Contingency Plan before December 25, 2018.

18. In January 2017, a DRAFT For Internal Discussion Only NPS Contingency Plan for Fiscal Year 2018 was created by the new administration which, if implemented, would have provided for the following:

    The continued access to park roads, trails and open-air memorials without visitor services;

    The mandatory closure of areas if visitor access "becomes a safety, health or resource protection issue;"

    The furlough of most of the agency's emergency responders but subject to call-back in an emergency; and,

    Mandatory posting of signs alerting visitors "that no visitor services, maintenance or other management activities will be conducted, and emergency and rescue services will be limited."

19. Upon information and belief, the DRAFT Fiscal Year 2018 NPS Contingency Plan was not properly submitted to OMB for review as required under both the Antideficiency Act and

4
COMPLAINT FOR DAMAGES

OMB Regulations, OMB Circular No. A-11 (2016), § 124 which provides, in pertinent part, that "whenever there is any significant modification, expansion, or reduction in agency program activities, the agency must submit an updated plan to OMB for review that reflects this change" *Id*. at Page 2 of § 124.

20. In January 2018, a DRAFT NPS Contingency Plan for Fiscal Year 2019 was created with virtually identical provisions as the Fiscal Year 2018 Contingency Plan.

21. To the extent the DRAFT Fiscal Year 2018 and 2019 NPS Contingency Plans were not properly submitted to OMB before the December 22, 2018 Governmental Shutdown, NPS and Yosemite National Park were required to close the parks pursuant to the 2014 Fiscal Year Contingency Plan.

22. The DRAFT Fiscal Years 2018 and 2019 NPS Contingency Plans' provisions to keep park facilities open without regard to a particular park facility's safety hazards violated NPS' mandatory duty to consider the public safety and welfare in developing its Contingency Plan for the following reasons:

    NPS has reported 6 fatalities at its facilities per week during normal operations with the full complement of visitor services including ranger enforcement of Park Rules and provision of emergency services;

    Yosemite National Park, alone, reported 133 deaths between 2007 and 2018;

    On September 4, 2018, a teenager fell to his death into Nevada Falls at Yosemite National Park;

    NPS officials know, and knew then, that park trails involving moving water, icy conditions and water falls with high elevations, like that present at Yosemite National Park's John Muir Trail during winter months, present imminent risk of harm so much so that its' companion trail, The Mist Trail, is closed during the winter months;

    NPS officials have stated efforts to minimize the risk of serious injury and fatalities depends upon **a joint effort** between NPS agents and visitors;

    During prior governmental shutdowns in 1995 and 2013 as well as their aftermath, NPS officials have gone on record that closure of park facilities was, and is, necessary to protect human life when visitor services cannot be provided due to a lapse in appropriations.

23. Under the terms of the 2014 Fiscal Year Contingency Plan, when NPS and

Yosemite National Park were forced to shutdown due to a lapse in appropriations on December 21, 2018, Defendant UNITED STATES, through NPS and Yosemite National Park officials, was required to close access to park roads and trails including Happy Isle Trailhead and post signs indicating the park was closed.

24. Under the terms of the DRAFT For Internal-Review Only 2018 and 2019 Fiscal Year Contingency Plans, when NPS and Yosemite National Park were forced to shutdown due to a lapse in appropriations, Defendant UNITED STATES through NPS and Yosemite National Park officials were required to:

> Post signs that no visitor services, maintenance or other management activities will be conducted, and emergency and rescue services will be limited; and,
>
> Close trails near the waterfalls on the basis that visitor access without visitor services presented a "safety, health or resource protection issue."

25. Pursuant to 2006 National Park Service Management Policies, irrespective of a governmental shutdown, NPS and Yosemite National Park agents were required to consider visitor safety and provide emergency medical services within the confines of the following policies:

> 8.2.5.1 Visitor Safety (Excerpts)
>
> The Service will strive to identify and prevent injuries from recognizable threats to the safety and health of person and to the protection of property by applying nationally accepted codes, standards, engineering principle and the guidance contained in Director's Orders #50B, #50C, #58 and #82 and their associated reference manuals. When practicable and consistent with congressionally designated purposes and mandates, the Service will reduce or remove known hazards and apply other appropriate measures, including closures, guarding, signing or other forms of education. In doing so, the Service's preferred actions will be those that have the least impact on park resources and values.
>
> 8.2.5.6 Emergency Medical Services (Excerpts)
>
> The Service will make reasonable efforts to provide appropriate emergency medical services to person who become ill or injured.

26. Pursuant to National Park Service Director's May 7, 2010 Order #50C, Defendant UNITED STATES through its agency, NPS, was required, at all times, to engage in reasonable injury prevention measures including the following:

1.2 Purpose

The purpose of this Director's Order is to set a new service wide direction, with increased emphasis on the prevention of visitor incidents. While the NPS has historically been concerned about responding to the safety need of park visitors, this policy is intended to provide standards or guidelines that enhance park efforts to improve overall injury prevention in parks.

2.1 Policy

NPS performance goals mandated under the Government Performance and Results Act include the requirement that NPS work toward achieving the following goal: "Visitors safely enjoy and are satisfied with the availability, accessibility, diversity and quality of park facilities, services and appropriate recreational opportunities." This goal includes two targeted objectives that directly relate to visitor safety: (1) reduce the number of visitor serious injuries, and (2) reduce the number of fatalities in parks.

3.1 Associate Director, Visitor and Resource Protection (VRP)

While the primary role of the NPS Law Enforcement Program is visitor and resource protection, law enforcement officers are positioned to play a pivotal role in visitor injury prevention. In addition to their authority to enforce park regulations, they are expected to advise visitors regarding unsafe behavior and conditions, and interact with them to inform and educate.

27. For the reasons stated within this Complaint, when appropriations lapsed on December 21, 2018 for the NPS, Defendant UNITED STATES by and through its NPS and Yosemite National Park agents failed to comply with the mandatory duties described above, acted unreasonably and was otherwise negligent in permitting visitor access to Yosemite National Park's trails including The John Muir Trail near Happy Isle Trailhead without appropriate visitor services, notice of closure and limited services, notice and enforcement of Park Rules (including prohibition of dogs on the trail), and other services required to minimize safety hazards and the risk of serious injury or death.

28. Moreover, Defendant UNITED STATES violated its mandatory duty to refrain from incurring unfunded debts under the Antideficiency Act by allowing visitors access to The John Muir Trail and other national park facilities with full knowledge that serious injury was probable and, thus, acted to incur potential future liability. Indeed, contemporaneously, several interested parties including The Public Land Conservation Trust referred to keeping park facilities

open without staff "reckless."

29. On December 25, 2018, Joshua Conner and his girlfriend along with their two dogs parked at Happy Ilse Trailhead in Yosemite National Park to go hiking.

30. Upon Joshua Conner and his girlfriend's arrival to Yosemite National Park and Trailhead, there were no signs advising them that there were no visitor services available, nor that emergency and rescue services would be limited due to the governmental shut-down.

31. As Joshua Conner and his girlfriend hiked along The John Muir Trail with their two dogs, they saw no signs nor received any instructions that dogs were not permitted on the trail. To the contrary, they saw multiple hikers who were also accompanied by dogs.

32. Upon information and belief, had the Park been staffed, Joshua Conner and his girlfriend would have been refused further access to the trail with their dogs; would have ben re-directed to dog-friendly trails and would have been fully instructed on the Park's dog restrictions.

33. At all times relevant, Joshua Conner and his girlfriend were lawfully permitted to be on the premises.

34. At approximately 2:30PM, while on the Silver Apron in between Nevada Falls and Vernal Falls, Joshua Conner attempted to retrieve one of their dogs that had gone off the trail. He and the dog slipped on icy conditions into the Merced River.

35. Although 911 and National Park Services Search and Rescue Service were immediately notified, Search and Rescue Service did not arrive on-foot to aid Joshua Conner until almost an hour later at 3:25PM.

36. Upon information and belief, the Yosemite Park's Helicopter Exclusive Use Helicopter Operation was non-operational due to the shutdown.

37. Instead of having access to Yosemite Park's Exclusive Use Helicopter Operation for emergency medical assistance and evacuation, first responders were forced to request assistance from Paso Robles, a city located over 240 miles from Yosemite Park.

38. At 3:45PM, CHP's H-70 out of Paso Robles denied flight due to "pumpkin time" (limited daylight).

39. On December 25, 2018, the sunset in Yosemite National Park at approximately 4:45PM.

40. Upon information and belief, had Yosemite Park's Exclusive Use Helicopter Operation been operational at the time of Mr. Conner's fall into the river at 2:25PM, the SAR Team would have been able to evacuate him from the mountain and deliver him to a Trauma Level 1 Center where life-saving treatment could have been provided exponentially increasing his chances of survival.

41. At approximately 5:50PM, Joshua Conner was pronounced dead while Yosemite National Park's SAR Team was still attempting to warm him on the mountainside but unable to provide Level 1 Trauma Care required.

42. On January 3, 2019, former National Park Services Director, Jonathan Jarvis, published an editorial opinion stating that keeping the park facilities open without staff violates National Park Service's founding charter to keep the parks "unimpaired for the enjoyment of future generations" citing to, among other reasons, the lack of information regarding hazardous conditions and lack of rule enforcement including "dogs off leash."

43. On January 4, 2019, Yosemite National Park officials announced on its website that "all section of the John Muir Trail and Mist Trail are closed. There is no trail access to Vernal or Nevada Fall(sic)." Upon information and belief, this was a belated acknowledgement by NPS officials that it was reckless to allow access to the John Muir Trail and Falls without appropriate supervision; enforcement of Park Rules and availability of emergency response services.

## V.

## CAUSE OF ACTION

**(Wrongful Death)**

44. Plaintiff realleges and incorporates herein each and every previous allegation.

45. As the threat of a lapse in appropriations became more imminent in December 2018, Defendant UNITED STATES, through NPS and Yosemite National Park officials, was required to implement a Contingency Plan for shutdown that had been properly submitted and

reviewed by OMB and that properly considered visitor safety.

46. NPS violated its mandatory duties as described above; was unreasonable and otherwise negligent under the circumstances when it allowed unfettered visitor access to Yosemite National Park trails without available visitor services, including ranger supervision and emergency rescue.

47. NPS agents' failure to close The John Muir Trail, specifically, violated its mandatory duties under all of the Contingency Plans proposed between 2013 and 2018 since visitor access presented a serious safety issue.

48. The DEFENDANT'S negligence as describe above was a substantial factor in causing Joshua Conner's death and Plaintiff's damages and losses.

49. As a direct and proximate result of the Defendant UNITED STATES' negligence and violation of mandatory duties as described above,

1) Joshua Conner was allowed access to The John Muir Trail without appropriate supervision, notice of safety rules nor access to emergency rescue services;

2) Joshua Conner was permitted to hike with dogs on a trail near dangerous waterfalls without any notice that dogs were prohibited on the trail and presented additional safety hazards;

3) Joshua Conner fell into the icy river sustaining life-threating injuries;

4) After sustaining life-threatening injuries, Joshua Conner was denied prompt access to life-saving rescue services, and specifically Yosemite National Park's Exclusive Use Helicopter Services, due to the governmental shutdown;

5) Joshua Conner suffered his untimely and avoidable death and/or suffered a significant loss of chance of survival;

6) Plaintiff DEBORAH NICKLES and Joshua Conner's other surviving family members, CORY CONNER and JEFFREY CONNER suffered the loss of their son and brother.

# VI.

# **PRAYER FOR RELIEF**

50.   WHEREFORE, Plaintiff  DEBORAH NICKLES, Individually and as Administrator of the Estate of Joshua Conner prays for judgment against the Defendants, UNITED STATES, and DOES 1 through 10 as follows:

1. For all non-economic damages available under law;
2. For all economic damages available under law;
3. For attorney fees as allowable by law;
4. For costs of suit and prejudgment interest as permitted under law; and,
5. Any other relief this Court deems is just and proper.

DATED:  March 3, 2023

*/s/ Margaret J. Grover*

MARGARET J. GROVER, Esq.
State Bar No. 112701
Grover Workplace Solutions, P.C.
1300 Clay Street, Suite 600
Oakland, CA 94612-1427
Telephone: 510-654-1678
mgrover@groverworkplacesolutions.com

RHONDA BAKER DEBEVEC, Esq., OH
State Bar No. 0068260
The Debevec Law Firm, LLC
700 W. Saint Clair, Suite 214, Cleveland, Ohio 44113
Telephone: 216-331-0954
rdebevec@debeveclaw.com

Attorneys for Plaintiff